IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADRIENNE M. BOULWARE,<br><br>                    Petitioner,<br><br>vs.<br><br>JANEL ESPINOZA, Acting Warden,<br>California Central Women's Facility,[1]<br><br>                    Respondent. | No. 2:15-cv-02323-JKS<br><br>MEMORANDUM DECISION |

Adrienne M. Boulware, a state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Boulware is in the custody of the California Department of Corrections and Rehabilitation and incarcerated at the Central California Women's Facility. Respondent has answered, and Boulware has not replied.

I. BACKGROUND/PRIOR PROCEEDINGS

On October 16, 2011, Boulware and her co-defendant, Amoura Dawson, were charged with the murder and torture of Audie Hogue. Both Boulware and Dawson pled not guilty to the charges and proceeded to a jury trial on September 3, 2013, where two juries were empanelled. On direct appeal of her conviction, the California Court of Appeal laid out the following facts underlying the charges against Boulware and the evidence presented at trial:

> On September 14, 2011, the body of Audie Hogue was discovered in the parking lot of an abandoned car wash on Marysville Boulevard. He had been beaten to death. He had blunt force injuries to his head, neck, and torso and sustained internal injuries

---

[1] Janel Espinoza, Acting Warden, California Central Women's Facility, is substituted for the State of California. FED. R. CIV. P. 25(c); Rule 2(a), Rules Governing Section 2254 Cases in the United States District Courts; *Stanley v. Cal. Supreme Court*, 21 F.3d 359, 360 (9th Cir. 1994).

including multiple rib fractures, a pancreas almost split in two, and lacerations to his small intestines. His blood-alcohol content was 0.30 percent.

A mini mart's surveillance videotape from the night before showed [Boulware] and Dawson going back and forth between the mini mart and the car wash several times, purchasing beverages during each visit to the mini mart. The videotape also showed Hogue, who had been panhandling earlier in the day in the mini mart's parking lot, staggering and barely able to get up off the curb, waving to someone across the street and then walking across the street to the car wash just after [Boulware] and Dawson were seen walking towards the car wash. Hogue was never to be seen again on the videotape. Sometime between 8:30 and 9:30 a.m. the next day, the videotape showed [Boulware] and Dawson at the mini mart, watching the officers investigate the crime scene at the car wash.

The jury heard tapes of a police interview with [Boulware], a pretext call [Boulware] made to Dawson, and a secretly recorded conversation at the jail between [Boulware] and Dawson and thereafter with police officers. Initially, [Boulware] told officers she was not in the area but identified Dawson as beating Hogue. She then changed her story and denied responsibility, claiming she left with her friend Tennessee when Dawson started to beat Hogue after he called Dawson a name. [Boulware] knew that Dawson had stomped Hogue "real bad," punching him more than 30 times and kicking him 50 to 65 times in the face and head. [Boulware] bought a beer for Dawson after the beating. When officers told [Boulware] that her shoeprints were at the scene and her shoes would be checked for blood, [Boulware] claimed she went back to the car wash to check on Hogue and sat him up. She said he had been injured on a cement block. During the pretext call, when [Boulware] told Dawson the police were looking for her, Dawson disputed [Boulware]'s statement that [Boulware] and Tennessee had left, claiming [Boulware] had done the "most damage" to Hogue and they both had blood on their clothes and shoes. After the pretext call, [Boulware] continued to deny to the police that she participated in the beating. During the subsequent jailhouse conversation, [Boulware] admitted that she punched Hogue twice and kicked him in the stomach once. While [Boulware] claimed Hogue hit Tennessee first, Dawson said [Boulware] hit Hogue first and then Dawson and [Boulware] both kicked and hit Hogue until he could not get up. Dawson stated that she had to pull [Boulware] off of Hogue, that Hogue never got up, and that he was half dead when they left.

*People v. Boulware*, No. C075063, 2015 WL 965843, at *1 (Cal. Ct. App. Mar. 3, 2015).

At the conclusion of trial, Boulware's jury found her not guilty of first-degree murder as charged in Count 1, but guilty of the lesser-included offense of second-degree murder. The jury

also found her guilty of torture as charged in Count 2.[2] The trial court subsequently sentenced Boulware to 15 years to life imprisonment for Count 1.[3] The court also imposed 7 years to life imprisonment on Count 2, which was stayed pursuant to California Penal Code § 654.[4]

Through counsel, Boulware appealed her conviction, arguing that the prosecutor committed misconduct during closing and rebuttal arguments to the jury by: 1) misstating the law defining the provocation element of heat of passion; and 2) repeatedly urging the jury to consider the type of people that Boulware and Dawson are. With respect to both claims, Boulware contended that, if the error was waived by trial counsel's failure to object, trial counsel provided ineffective assistance with respect to that failure. The Court of Appeal unanimously affirmed the judgment against Boulware in a reasoned, unpublished opinion issued on March 3, 2015. *Boulware*, 2015 WL 965843, at *5. Boulware petitioned for review of all claims, which the California Supreme Court summarily denied on May 13, 2015.

Boulware then timely filed a *pro se* Petition for a Writ of Habeas Corpus to this Court on October 4, 2015. *See* 28 U.S.C. § 2244(d)(1)(A).

II. GROUNDS/CLAIMS

In her *pro se* Petition before this Court, Boulware raises the claims she unsuccessfully raised to the state courts on direct appeal. First, she argues that the prosecutor committed

---

[2] On the same day, Dawson's jury also found her guilty of second-degree murder and torture.

[3] Dawson received the same sentence.

[4] Section 654 provides in relevant part that "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." CAL. PENAL CODE § 654.

misconduct during summation by misstating the law defining the provocation element of heat of passion. She likewise argues in Ground 2 that the prosecutor committed misconduct in rebuttal argument by urging the jury to convict Boulware based on her character. Finally, she contends that defense counsel rendered ineffective assistance by failing to object.

### III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision." *Id.* at 412. The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

4

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). A summary denial is an adjudication on the merits and entitled to deference. *Harrington v. Richter*, 562 U.S. 86, 99 (2011). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

Boulware has not replied to Respondent's answer. The relevant statute provides that "[t]he allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true." 28 U.S.C. § 2248; *see also Carlson v. Landon*, 342 U.S. 524, 530 (1952). Where, as here, there is no traverse filed and no

evidence offered to contradict the allegations of the return, the court must accept those

allegations as true. *See Phillips v. Pitchess*, 451 F.2d 913, 919 (9th Cir. 1971).

IV. DISCUSSION

Boulware's claims in this Petition stem from two comments the prosecutor made during closing

and rebuttal arguments and her counsel's failure to object to them. The Court of Appeal

considered and rejected these claims on direct appeal as follows:

> [Boulware] contends that the prosecutor committed prejudicial misconduct during closing and rebuttal arguments to the jury by misstating the law and by urging the jury to convict based on her character. She recognizes that defense counsel failed to object and contends in the alternative that defense counsel rendered ineffective assistance. We reject her contention.
>
> *Background*
> In closing argument, the prosecutor did not discuss voluntary manslaughter. Instead, the prosecutor discussed first and second degree murder, focusing on the secretly taped discussion between [Boulware] and Dawson, the subsequent simultaneous questioning of [Boulware] and Dawson by the officers and the video surveillance tapes from the mini mart. The prosecutor argued that while Dawson was at the mini mart after stomping Hogue (surveillance videotape showed Dawson had limped across the street to the mini mart), [Boulware] was still at the car wash with Hogue "as he's laying on the ground, bleeding from his head, blood gushing everywhere, hanging out with Tennessee like it is nothing. You get the picture of what type of people you are dealing with. [¶] A man is laying there, head busted open, bleeding, blood everywhere, she is hanging out like it is nothing. These are the type of people you are dealing with." The prosecutor also argued, "Remember, for the last 15 minutes after Dawson walks across the street, they are hanging out at the car wash. Again, Audie Hogue's head plastered. 15 minutes they are hanging out chilling, while this man is laying there looking like this. This is the type of people [Boulware and Dawson] are. This is who they are." There was no objection.
>
> Defense counsel argued that the evidence was wanting and that [Boulware] did not commit the crimes. The defense theory was that after [Boulware] left the car wash, Dawson returned and continued to beat Hogue or someone else went to the car wash and killed Hogue. Defense counsel argued that the prosecutor had not proven what happened or when the injuries were inflicted on Hogue. Defense counsel disputed the prosecutor's description of the crimes, stating it was "conjecture" that [Boulware] stood by and watched Hogue die. Defense counsel claimed that the detectives used deception to obtain [Boulware's] statements and that [Boulware] used deception in return. He argued the jury could not find [Boulware] guilty because it believed she was an evil person and that

6

the trial was not about her character but about her state of mind.  He argued only briefly that the jury should consider voluntary manslaughter based on heat of passion because [Boulware] did not act with a reasonable and sober mind in reaction to Hogue's verbal assault of Dawson and physical assault on Tennessee.

In rebuttal, the prosecutor argued that second degree murder at a minimum had been proven.  The prosecutor did not discuss the type of person he believed [Boulware] to be.  In discussing voluntary manslaughter, the prosecutor argued:

"[Defense counsel] briefly mentioned voluntary manslaughter.
"I'm going to briefly tell you why it doesn't apply.
"Three elements.  The defendant was provoked.  Okay.  Someone calls you a name, a n[——], a b[——], that's some provocation.  Subjective.
"Number two, as a result of the provocation, the defendant acted rashly and under the influence of intense emotion that obscured her reasoning or judgment.  Subjective.  So it is possible, okay?
"Number three is the objective part, objective.  The provocation would have caused a person of average disposition to act rashly and without due deliberation.  That is, from passion rather than from judgment.  That's the average person, not the average drinking person, average Jane, average Joe.
"Now, would the average person react the way [Boulware and Dawson] did?  Somebody calls you a n[——], somebody calls you a b[——], how would the average person react?  The average person might get mad.  The average person might throw a punch, but the average person does not stomp a man up to 60 times.  An average woman does not stomp a man up to 60 times.  You can think of the worse name anybody could ever call you, but the average Joe and the average Jane does not stomp a man to lacerate his pancreas.  Average Jane, average Joe gets mad, throws a punch, but you don't beat and punch a man where your hands get bloody, where you hurt your foot, kick him in the nuts, stomp him in the head, 40, 50, 60 times?  No, that's why.
"See, number three is, I call it the 'I get it' section because the average Jane, average Joe says I get it.  I can see how that can happen.  I can see how a person based upon why they did snapped and did all these things.  You can't say that simply because somebody calls you a name.  You can't say that because the average person doesn't go off like that and go off like that and go off like that.  They don't.  That's why [defense counsel] didn't want to talk about it, because it doesn't apply."  Defense counsel did not object.

The court properly instructed the jury on voluntary manslaughter in the language of CALCRIM No. 570.  The jury did not have any questions during deliberations.

*Analysis*

Defense counsel did not object or seek a curative admonition at trial and nothing suggests an admonition would have been futile; thus, [Boulware] forfeited her claim of prosecutorial misconduct.  (*People v. Linton* (2013) 56 Cal.4th 1146, 1205.)

7

Nevertheless, since [Boulware] contends counsel rendered ineffective assistance by failing to object to the misconduct, we also consider and reject her claim challenging counsel's performance.

To establish ineffective assistance of counsel, [Boulware] must demonstrate counsel's performance was deficient and that [Boulware] suffered prejudice as a result. (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688, 691-692 [80 L.Ed.2d 674, 693, 696]; *People v. Ledesma* (1987) 43 Cal.3d 171, 216-218 (*Ledesma*).)

"In evaluating a defendant's claim of deficient performance by counsel, there is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance' [citations], and we accord great deference to counsel's tactical decisions. [Citation.]" (*People v. Frye* (1998) 18 Cal.4th 894, 979, disapproved on other grounds in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn.22.) Moreover, "'"[if] the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged [,] . . . unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation," the claim on appeal must be rejected.' [Citation.] A claim of ineffective assistance in such a case is more appropriately decided in a habeas corpus proceeding. [Citations.]" (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266-267.)

"'"[F]ailure to object seldom establishes counsel's incompetence"'" (*People v. Majors* (1998) 18 Cal.4th 385, 403) and counsel is not required to make meritless objections. (*People v. Anderson* (2001) 25 Cal.4th 543, 587.)

To demonstrate prejudice, [Boulware] must show that "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' [Citations.]" (*Ledesma*, *supra*, 43 Cal.3d at pp. 217-218; *People v. Maury* (2003) 30 Cal.4th 342, 389.) "Generally, . . . prejudice must be affirmatively proved." (*Ledesma*, *supra*, 43 Cal.3d at p. 217.)

The prosecutor correctly recited the objective part of the state of mind required for voluntary manslaughter. But immediately thereafter, in discussing the objective part, the prosecutor argued that there was insufficient provocation for the average person to have stomped, kicked, and hit Hogue 40, 50, or 60 times. This may have caused confusion since "[t]he proper focus is on the defendant's state of mind, not on his particular act." (*People v. Beltran* (2013) 56 Cal.4th 935, 949; *see also People v. Najera* (2006) 138 Cal.App.4th 212, 223 ["[h]ow the killer responded to the provocation and the reasonableness of the response is not relevant to the sudden quarrel or heat of passion"].) The record does not reflect the reason for defense counsel's failure to object but there is an explanation. [Boulware's] defense was that after [Boulware] left the car wash, Dawson returned or someone else went to the car wash and inflicted the fatal blows to Hogue and that [Boulware] was not guilty of murder or manslaughter.

In any event, we do not find any prejudice. The prosecutor's discussion was brief. Further, the trial court properly instructed the jury on the objective element for the state of mind for voluntary manslaughter (CALCRIM No. 570; *People v. Beltran*, *supra*, 56 Cal.4th at pp. 954–956) and instructed that where counsels' comments conflicted with the instructions, the jury was to follow the instructions. (CALCRIM No. 200.) We

8

presume the jury followed the instructions. (*People v. Boyette* (2002) 29 Cal.4th 381, 436.) Moreover, there was not any evidence that Hogue's use of a racial and sexist slur towards Dawson or Hogue's use of force upon Tennessee provoked anger in [Boulware]. Further, after beating Hogue, [Boulware] and Dawson fled from the car wash. [Boulware] has failed to demonstrate prejudice from counsel's failure to object to the prosecutor's argument.

    The prosecutor's reference to [Boulware] and Dawson as people who were cold and callous was fair comment on the evidence. The evidence supported the prosecutor's argument that after beating Hogue to a pulp, [Boulware] and Dawson calmly went back to the mini mart for another beverage. Any objection would have been meritless. Further, in closing, defense counsel responded to the prosecutor's statements, arguing that the trial was not about [Boulware]'s character but about her state of mind and claiming [Boulware] was not an evil person. [Boulware] has failed to demonstrate that counsel's performance was deficient.

    We reject [Boulware]'s claim of ineffective assistance of counsel.

*Boulware*, 2015 WL 965843, at *2-5.

Because counsel did not object to the challenged statements at trial, the Court of Appeal found that Boulware had forfeited the claims on direct appeal. *Id.* at *3. Because Boulware argued ineffective assistance of counsel with respect to the forfeiture, however, the Court of Appeal discussed the claims nonetheless, and ultimately concluded that Boulware was not prejudiced by counsel's inaction because: 1) with respect to the alleged misstatement of law, the prosecutor's discussion was brief and the trial court correctly instructed the jury; and 2) the prosecutor's reference to Boulware and Dawson as people who were cold and callous was fair comment on the evidence. *Id.* at *3-5. These conclusions are both reasonable and supported by the record.

For the same reasons, Boulware cannot show that the prosecutor's statements constituted misconduct. To successfully raise a claim cognizable on habeas review based on a prosecutor's comments at trial, a petitioner must demonstrate that the prosecutor's comments "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v.*

9

*Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). Under this standard, only egregious prosecutorial misconduct can give rise to a constitutional claim. *See Duckett v. Godinez*, 67 F.3d 734, 743 (9th Cir. 1995). A prosecutor's comments in summation constitute grounds for reversal only when the remarks caused actual prejudice. *Shaw v. Terhune*, 380 F.3d 473, 478 (9th Cir. 2004) (applying harmless error test to claim of prosecutorial misconduct in summation). Because, for the reasons persuasively articulated by the Court of Appeals, Boulware fails to establish prejudice, her prosecutorial misconduct claim fails. Likewise, because Boulware does not show that the prosecutor committed misconduct, she cannot show that counsel was ineffective for failing to object or that she was prejudiced by the failure. *See Rupe v. Wood*, 93 F.3d 1434, 1444-45 (9th Cir. 1996) (defense counsel's failure to raise a meritless argument or to take a futile action does not constitute ineffective assistance of counsel). Boulware is not entitled to federal habeas relief.

## V. CONCLUSION AND ORDER

Boulware is not entitled to relief on any ground raised in her Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*,

537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals. *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: March 7, 2018.

/s/James K. Singleton, Jr.  
JAMES K. SINGLETON, JR.  
Senior United States District Judge